UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MICHAEL AHART, ET AL.            CIVIL ACTION NO. 6:13-cv-02787

VERSUS                           MAGISTRATE JUDGE HANNA

PAUL MOUTON, ET AL.              BY CONSENT OF THE PARTIES


## MEMORANDUM  RULING


Currently pending is the motion for summary judgment (Rec. Doc. 30), which was filed on behalf of defendant Paul Mouton, the duly elected City Marshal of the City of Opelousas, Louisiana, and defendant Frank Angelle, individually and in his capacity as Deputy Marshal of the City of Opelousas.  The motion is opposed.  Oral argument was held on June 23, 2015.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is GRANTED.


## BACKGROUND


This lawsuit was brought on behalf of Michael Ahart, individually and acting on behalf of his minor daughter, Alexis Ahart.  According to the complaint, Opelousas Deputy Marshal Frank Angelle entered the Aharts' home on August 22, 2013, without a search warrant and without consent of the owner of the property.  It is alleged that Deputy Marshal Angelle searched and photographed the residence in

violation of Mr. Ahart's constitutional rights.  It is also alleged that, after he observed Alexis videotaping him while he was in the Aharts' home, Angelle injured her wrist while taking her phone out of her hand to delete the video, using force that was excessive under the circumstances and amounted to both a violation of her Constitutional rights and state-law assault and battery.

The plaintiff claims that he was harmed in two ways.  First, Mr. Ahart alleges that he is aggrieved by Deputy Marshal Angelle entering his home and searching it without his consent.  Second, Mr. Ahart alleges that his daughter was injured when Deputy Marshal Angelle used excessive force in stopping her from taking photos of him during the search.

### ANALYSIS

The defendants' motion for summary judgment seeks to have this Court dismiss the claims asserted against Deputy Marshal Angelle on the basis of qualified immunity, dismiss the claims asserted against Marshal Mouton, and decline jurisdiction over the state-law claims.

**A.    MOTION FOR SUMMARY JUDGMENT STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of

its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4]

All facts and inferences are construed in the light most favorable to the nonmoving party,[5] but the nonmoving party may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment

---

[1]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4]    *Washburn v. Harvey*, 504 F.3d at 508, citing *Celotex Corp. v. Catrett*, 477 U.S. at 323.

[5]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

by setting forth particular facts indicating that there is a genuine issue for trial.[6]  After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.[7]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[8]  The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[9]

When, as in this case, the defendants advance the affirmative defense of qualified immunity, the usual summary judgment burden shifts to the plaintiffs to show that the defense is not available.[10]

---

[6]     *International Association of Machinists and Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000), citing (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248–49.

[7]     *International Association of Machinists and Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d at 798, citing *Celotex Corp. v. Catrett*, 477 U.S. at 322.

[8]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[9]     *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[10]     *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

-4-

**B.**   **THE STANDARD FOR EVALUATING A SECTION 1983 CLAIM**

The complaint states that the plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 and 1988 as well as under Louisiana law.  Section 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another person's Constitutional rights. Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[11]  To state a section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[12]  In this case, the defendants do not contest whether Marshal Mouton or Deputy Marshal Angelle acted under color of law at any relevant time.  They do challenge whether the defendants' actions or omissions are constitutional violations.

**C.**   **THE STANDARD FOR EVALUATING QUALIFIED IMMUNITY**

Qualified immunity, an affirmative defense to a suit under 42 U.S.C. § 1983, protects government officials in their personal capacity, while performing

---

[11]     *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979);*Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

[12]     *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

discretionary functions, not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[13]   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[14]

Although qualified immunity is "nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised."[15]   To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.[16]

Because the defendants have raised the qualified immunity defense in this case, Deputy Marshal Angelle is entitled to qualified immunity on summary judgment unless (1) the plaintiff has adduced sufficient evidence to raise a genuine dispute of material fact suggesting that Deputy Marshal Angelle's conduct violated an actual

---

[13]     *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  See, also, *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012).

[14]     *Whitley v. Hanna*, 726 F.3d at 638, quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[15]     *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012), quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[16]     *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

constitutional right, and (2) Deputy Marshal Angelle's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.[17]  This is so because the Fifth Circuit

> applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity.  First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiffs constitutional rights.  If not, our analysis ends.  If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.  To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.[18]

Recently, the United States Supreme Court clarified the role of the courts in deciding a qualified immunity defense at the summary judgment stage.  Specifically, the Court held that the Court of Appeals failed to view the evidence in a light most favorable to the nonmoving party, and in so doing, provided a roadmap for the district court to follow in its analysis:

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged

---

[17]  *Poole v. City of Shreveport*, 691 F.3d at 627.

[18]  *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007) (internal citations omitted).

inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury,. . . show the officer's conduct violated a [federal] right[.]"

* * * * *

The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. Governmental actors are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." ...

Courts have discretion to decide the order in which to engage these two prongs. But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In making that determination, a court must view the evidence "in the light most favorable to the opposing party."

Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or seizures, we have instructed that courts should define the "clearly established" right at issue on the basis of the "specific context of the case." Accordingly, courts must take care not to define a case's

"context" in a manner that imports genuinely disputed factual propositions.[19]

Furthermore, as the Fifth Circuit has stated:

> [The parties'] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. . . . [S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.[20]

In this case, as will be fully explained below, the plaintiff has not presented sufficient evidence to negate the assertion of qualified immunity. Accordingly, Deputy Angelle is entitled to qualified immunity.

## D.   THE PLAINTIFF'S FACTUAL ASSERTIONS

The defendants supported their factual assertions with references to deposition testimony. In response, the plaintiff argued that, at the summary judgment stage of such a lawsuit, the nonmovant's evidence is to be believed and all justified inferences

---

[19]      *Tolan v. Cotton*, ___ U.S. ___, 134 S.Ct. 1861, 1865 - 66, (2014) (internal citations omitted).

[20]      *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations and quotation marks omitted; emphasis in original).

must be drawn in favor of the plaintiff.  In his briefing, the plaintiff described what he claims occurred at the Ahart residence on the day in question.  According to the plaintiff's memorandum, Alexis Ahart was at home babysitting her siblings when Deputy Marshal Angelle entered the home without consent or a warrant, knocked down a box of personal belongings, then photographed the mess.  The plaintiffs claim that she called her father, who instructed her to videotape the intruder.  They claim that Deputy Marshal Angelle became "worked up," raised his voice, gripped Alexis's wrist, seized her telephone, then made her erase the video, spraining Alexis's right wrist and causing her emotional distress and fear.  (Rec. Doc. 39 at 6).  These allegations are set forth in the plaintiff's briefing – but in opposing the defendants' motion for summary judgment, the plaintiff did not present any affidavits or deposition testimony to support these allegations.  In fact, the plaintiff offered no competent evidence supporting his version of the alleged events.

Fed. R. Civ. P. 56(c)(1)(A) states that a party asserting that a fact is either disputed or cannot be disputed must support that assertion by "citing to particular parts of materials in the record" such as depositions, affidavits, stipulations, admissions, or answers to interrogatories.  Thus, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings or on

unsubstantiated assertions.[21]  Instead, "the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim."[22]  The plaintiff has not satisfied that burden.

Numerous statements are made in the plaintiff's opposition memorandum that purport to set forth facts, but unsworn memoranda are not competent summary judgment evidence.[23]  The only evidence in the record that supports the plaintiff's version of events is found in unsworn statements given to the Opelousas Police Department by Michael and Alexis Ahart.  Those statements, however, were not submitted by the plaintiff along with his memorandum opposing the defendants' motion for summary judgment, and they were not cited or even mentioned by the plaintiff in his argument.  Even if the plaintiff had attempted to rely upon the unsworn statements, however, the attempt would have been futile.  An unsworn statement is not competent summary judgment evidence because it does not comply with the requirements of Rule 56.[24]

---

[21]     *Harris v. Smith*, 482 Fed. App'x 929, 930 (5th Cir. 2012); *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

[22]     *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

[23]     *Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

[24]     *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001); *Nissho-iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–07 (5th Cir. 1988).

The unsworn statements were attached as exhibits to an affidavit by Officer Herbert Levier.  (Rec. Doc. 30-7).  While an affidavit is competent summary judgment evidence, Officer Levier has no personal knowledge of the events described in the unsworn statements.  To be used in supporting a motion for summary judgment, an affidavit "must be made on personal knowledge."[25]  Consistently, a court ruling on a motion for summary judgment may not consider hearsay evidence contained in affidavits.[26]  "Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial."[27]  Therefore, Officer Levier's affidavit does not convert the unsworn statements into competent summary judgment evidence.

Thus, the plaintiff has not offered any competent evidence supporting his alleged version of events.

E.   <u>**FACTUAL FINDINGS**</u>

Based on the competent evidence presented, the Court makes the following factual findings.

---

[25]     Fed. R. Civ. P. 56(c)(4).

[26]     *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[27]     *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

At the relevant time in August of 2013, Michael Ahart, his wife Holly, his daughter Alexis, his other children, and his mother Cynthia Ahart were all living in a home on East North Street in Opelousas, Louisiana.  Cynthia Ahart had not lived in the house for approximately a decade until about ten days before the incident, when she moved back in.  Cynthia Ahart initiated eviction proceedings against her son and his family.  Deputy Marshal Angelle served the eviction notice on Mr. Ahart.  A day or so later, Cynthia Ahart returned to the Opelousas City Marshal's office and requested that a marshal escort her to the home so that she could get some clothes and other items so she could stay in a hotel until the eviction process was completed. Deputy Marshal Angelle was assigned this task, and he went to the house with Cynthia Ahart.  Upon arrival at the residence, Mrs. Ahart put her key in the lock, Deputy Angelle turned the key, and they walked into the house.  Deputy Marshal Angelle stood only in the hall and in the kitchen, did not move anything, and took some photographs at Mrs. Ahart's request.  When he observed Alexis Ahart filming him with her cell phone, he asked what she was doing.  She replied that she was filming him to put it on YouTube.  Deputy Marshal Angelle told Alexis that she did not have his permission to do so, and he asked her to stop and to delete the pictures she had taken.  Alexis attempted to hand him her telephone, but Deputy Marshal Angelle declined to touch her phone because he did not know how to operate it, and

-13-

he asked her to delete the photographs and video.  He watched as she did so.  He did not raise his voice, he did not touch Alexis's phone, and he did not touch Alexis.

## F.   THERE WAS NO SEARCH

The plaintiff alleges that Deputy Marshal Angelle conducted an unconstitutional search of his residence.  There are two reasons why this allegation has no merit.

First, there was no search.  The United States Supreme Court has held that merely looking at what is in plain view without disturbing it is not a search.[28]   No evidence was presented establishing that Deputy Marshal Angelle did anything other than look at what was in the house and take some photos.  The allegation that he knocked things down and then photographed them was made in the plaintiff's memorandum opposing the defendants' motion for summary judgment but it is not supported by any competent evidence.  Consequently, Deputy Marshal Angelle's presence in the Aharts' home did not constitute a search.

Second, Cynthia Ahart consented to Deputy Marshal Angelle's entrance into the house.  In fact, she invited him in.  "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable, [but] what is

---

[28]    *Arizona v. Hicks*, 480 U.S. 321, 325 (1987).

reasonable depends on the context within which a search takes place."[29]   A warrantless search is presumptively unreasonable unless it falls within an exception to the Fourth Amendment's warrant requirement.[30]   It is undisputed that Deputy Marshal Angelle entered the Aharts' home without a warrant.   But he was accompanied by Cynthia Ahart, a co-owner and resident of the home, pursuant to her request that he escort her to the residence.   Mrs. Ahart not only consented to Deputy Marshal Angelle's entering the home, she requested that he do so.

> It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions."  It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.[31]

Therefore, because Mrs. Ahart consented to Deputy Marshal Angelle entering the house, his presence there did not constitute an unreasonable search.

Even if Michael Ahart had objected to Deputy Marshal Angelle being in the house, his objection would not have counterbalanced Mrs. Ahart's consent because

---

[29]     *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).

[30]     *United States v. Guzman*, 739 F.3d 241, 245 (5th Cir. 2014), citing *United States v. Karo*, 468 U.S. 705, 717 (1984).

[31]     *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal citations omitted).

Mr. Ahart was not physically present.  "[T]he objection of an absent cotenant does not vitiate the consent of a physically present cotenant."[32]   Therefore, even though Deputy Marshal Angelle had no search warrant, Cynthia Ahart's permitting Deputy Marshal Angelle to go into the house cleared any Constitutional barrier to his presence.

Finally, even if there was a search, it was reasonable.  "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations."[33]  Cynthia Ahart asked Deputy Marshal Angelle to accompany her to the home as insurance against a domestic dispute and to take photos of some specific things.  Because she was in the process of evicting her son and his family from the home, this was a reasonable request and Deputy Marshal Angelle's actions were also reasonable.

Viewing the summary judgment evidence in the light most favorable to the plaintiff, as is required, the Court concludes that there is no evidence that Deputy Marshal Angelle violated the plaintiff's constitutional right to be free of unreasonable

---

[32]     *United States v. Cooke*, 674 F.3d 491, 499 (5th Cir. 2012).

[33]     *Grady v. N. Carolina*, ___ U.S. ___, 135 S. Ct. 1368, 1371 (2015).

searches.  Accordingly, Deputy Marshal Angelle is entitled to qualified immunity with regard to the alleged search of the Aharts' residence.

## G.   THERE WAS NO EXCESSIVE FORCE

The plaintiff's second claim is that, while he was in the Aharts' residence, Deputy Marshal Angelle wrested a cellphone from Alexis Ahart's hands, using force that was excessive under the circumstances, and injuring her wrist.

To prevail on a Fourth Amendment excessive force claim, a plaintiff must establish "(1) injury (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[34]  A plaintiff must show that the use of force was "clearly excessive to the need and was objectively unreasonable."[35]  A determination of whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the amount of force used against the need for force.[36] "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each

---

[34]    *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).  See, also, *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).

[35]    *Hill v. Carroll County*, 587 F.3d 230, 234 (5th Cir. 2009).

[36]    *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008).

particular case.'"[37]  Where, as here, the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[38]  "The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists."[39]

In this case, viewing the summary judgment evidence in the light most favorable to the plaintiff, as is required, the Court concludes that the plaintiff presented no evidence that Deputy Marshal Angelle actually touched Alexis. Therefore, there is no evidence that any amount of force was used and no evidence that excessive force was used.  Consequently, there is no evidence of a constitutional violation.  Accordingly, Deputy Marshal Angelle is entitled to qualified immunity with regard to the excessive force claim.

---

[37]     *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009), quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[38]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

[39]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d at 412.

## H.     THE CLAIMS AGAINST MARSHAL MOUTON

In addition to his claims against Deputy Marshal Angelle, the plaintiff also asserts claims against Opelousas City Marshal Paul Mouton.  "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[40]   In a Section 1983 action, a supervisory official may be held liable only if:   (i) he affirmatively participated in the acts that resulted in a constitutional deprivation; or (ii) he implemented unconstitutional policies that resulted in the plaintiff's injury.[41]  To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiff must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates.[42]   Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action."[43]

---

[40]      *Thompson v. Upshur County*, 245 F.3d at 459, quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5ᵗʰ Cir. 1987).

[41]      *Porter v. Epps*, 659 F.3d 440, 446 (5ᵗʰ Cir. 2011); *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5ᵗʰ Cir. 2008).

[42]      *Porter v. Epps*, 659 F.3d at 446.

[43]      *Porter v. Epps*, 659 F.3d at 446-47; *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1360 (2011).

In this case, there is no allegation that Marshal Mouton was present at the Aharts' residence on the day in question.  Furthermore, no evidence was presented to show that Marshal Mouton instituted an unconstitutional policy that was being followed by Deputy Marshal Angelle when he accompanied Cynthia Ahart to her home that day.  Finally, there is no evidence that Marshal Mouton acted or failed to act with deliberate indifference to the constitutional violations allegedly committed by Deputy Marshal Angelle.  "A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law."[44]  Consequently, there is no basis for the claims against Marshal Mouton, and they will be dismissed.

## I.    THE STATE LAW CLAIMS

The plaintiff asserted state law claims of assault and battery against Deputy Marshal Angelle, based on the allegation that he injured Alexis's arm when removing the cellphone from her hand.  In the motion for summary judgment, the defendants seek to have this Court decline jurisdiction over those claims.  Having concluded that the plaintiff's federal-law claims against the Marshal Mouton and Deputy Marshal Angelle should be dismissed, there is no remaining federal question before the court.

---

[44]    *Ledesma v. Swartz*, No. 2:96-CV-0491, 1998 WL 355480, at *2 (N.D. Tex. June 26, 1998), citing *Celotex v. Catrett*, 477 U.S. at 322–23.

Although this fact alone does not divest the court of jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."[45] Moreover, the general rule in this circuit is to dismiss state claims when the federal claims they supplement are dismissed.[46]   Therefore, this Court will decline to exercise its supplemental jurisdiction, and the plaintiff's state-law claims will be dismissed.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED.  The motion is granted with regard to the plaintiffs' Section 1983 claims against defendant Deputy Marshal Frank Angelle because he is entitled to qualified immunity, and those claims are dismissed with prejudice.  The motion is GRANTED with regard to the Section 1983 claims against Marshal Paul Mouton because the plaintiff failed to prove that a constitutional violation occurred, and those claims are

---

[45]    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)

[46]    *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999); *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

dismissed with prejudice.  The court declines to exercise supplemental jurisdiction over the plaintiff's state-law claims, and those claims are dismissed without prejudice.

Signed at Lafayette, Louisiana, this 20th day of July 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE